CHIEF JUSTICE WILLIAMS
delivered the opinion op the court:
Todd sold and delivered to Caplinger a horse August 9th, 1860, at $225, to be paid for when Bell and Everett should carry the electoral vote of Kentucky, they then being candidates for President'and Vice President of the United States. Bell and Everett did carry the electoral vote of Kentucky at the then pending election, and the horse not being paid for, Todd sued on said obligation February 20, 1867, to which Caplinger set up for defense that it was a bet upon an election and within the denunciations of our statute against the same; also, that the claim was barred by the statute of limitations. After wrhich Todd filed an amended petition, going on the implied assumpsit to pay a reasonable price for the horse within a reasonable time, and averring his value to be $225; and, in avoidance of the statute of limitations, averred that some fifteen months after the delivery of the horse Caplinger departed out of the State to parts unknown to him, and entered the military service of the late “Confederate” government; to which Caplinger answered, denying that the horse was worth more than one hundred dollars; denying that he ever purchased said horse save as upon the event of Bell and Everett carrying the electoral vote of Kentucky; admitting that he had entered the Confederate military lines in September, 1861, and remained therein until March, 1865; but denies that this prevented Todd from suing, and relies upon the bar by time.
The evidence established the sale and delivery at two hundred and twenty-five dollars, and the promise to pay *141 upon the event of Bell and Everett’s receiving the electoral vote of Kentucky; and that the horse was worth not exceeding one hundred and fifty dollars; whereupon, the court, at Caplinger’s instance, instructed the jury to find for him, and refused to instruct, at Todd’s instance; that the sale, upon the event of Bell and Everett receiving the electoral vote of Kentucky, was no bar to his recovering the real value of the horse, nor was he barred by time.
The jury having found for defendant, and the court having refused to set aside the verdict, the plaintiff has appealed.
The first question is, was plaintiff barred by our statute of March 6th, 1854 (1 Slant. Rev. Stat., 568), which provides for a fine upon both parties of one hundred dollars for betting on elections, as therein named; also, “ if the person winning shall receive the sum of money or thing bet, * * it shall be forfeited to the Commonwealth;” and, by section 2, the fines and money or property recovered by indictment or suit, as therein provided, shall go— two thirds to the Common School Fund, and the remainder to the Commonwealth’s Attorney.
It is contended, upon the authority of Love vs. Harris (18 B. Mon., 122), that this horse was forfeited to the State, and that neither the horse nor his value could be recovered by Todd.
It will be observed that the forfeiture provided in said statute is upon the condition that the winner shall receive the thing bet; and such was the case in Love vs. Harris; but here it is the loser who has received the thing, to-wit: the horse, and the winner has received nothing. The statute does not forfeit the money or thing bet; if so, the property or money of both parties would be forfeited so soon as bet, without any regard to the event and determination as to which should be the winner.
*142 The policy of the statute is to fine each party for its violation, without regard to which be winner or loser; and then, in order to take all motive of its violation from the winner, to forfeit whatever he may have received as winner, else he might be able to pay the fine and still profit by violating the statute.
But, notwithstanding this horse was delivered by appellant to appellee upon an illegal and vicious express contract, which cannot be enforced, it is insisted that the law will imply an assumpsit to pay his reasonable value.
In Commonwealth vs. Shouse (16 B. Mon., 328) this court held, “that a sale of property, to be paid for at its fair value, or at more than its fair value, in a certain event of a pending election, and not to be paid for at all, or to be paid for at more or less than its real value, as understood between the parties, in a different event of the same election, is in substance a bet upon the result of the election.”
In Brown's adm'r vs. Langford's adm'r, 3 Bibb, 500, this court said, that “ where there is a condition or covenant to do several things, a part of which is against the common law and the rest lawful, the condition or covenant will be void as to so much as is unlawful, and good for the residue. But this doctrine does not hold where a part of the consideration is unlawful. There is no question that a promise founded upon several considerations, one of which is vicious, is void;'' and the covenant being founded in part upon future concubinage, was held void. And in Daniel vs. Daniel, 6 Dana, 91, this court said, “ it is unquestionably true, that if part of the consideration of a contract be illegal, or against sound morals or public policy, the whole contract is void, and no part of it can be enforced. Ex turpi contractu oritur non actio.” (Chitty on Contracts, 215-18.)
*143 In Swan vs. Chandler and Phillips, 8 B. Mon., 98, in which Swan had feloniously bitten off Lanham’s ear, and, in compromise of the cause of litigation, had paid Lanham money, and executed the note sued upon, this court said : “ Whether, therefore, the right of Lanham to redress for the personal injury he sustained, did or not, form one of the elements of the contract between them, and constituted a portion of the consideration of the note sued on, is unimportant, if the other object contemplated by them, and which evidently formed the chief inducement to the agreement, was illegal,” it being to stop the prosecution by indictment, and in which Lanham was not to appear as a witness, was held to be illegal and void.
Gardner vs. Maxey, 9 B. Mon., 90, was a suit upon a note executed in consideration that Sturgeon would dismiss his action of assault and battery against Gardner, and would not appear as a witness before the grand jury to have an indictment found, it was held that the latter, being an illegal consideration, vitiated the whole contract, and the court said : “If, by entering into this illegal contract, the party injured should have precluded himself from all remedy for recovering compensation for the private injury which he may have sustained, he will have no right to complain that the attempted injury has recoiled upon himself,” he having dismissed his private action; the court also saying, “ the right of avoiding a contract, having for its object or consideration the defeat of the law itself, is allowed not for the advantage of the party, but for the benefit of the public.”
In Collins vs. Murell (2 Met., 163), this court held, that a note given for borrowed money, a portion of which was loaned for the purpose of gaming, was held as void in toto, and this notwithstanding the money was loaned in Cincinnati to be used there, but the note executed in *144 Kentucky. And in Bull, &c., vs. Harragan, &c. (16 B. Mon., 352), where the plaintiffs sued the defendants for lightning-rods sold and delivered, which were the products of Pennsylvania, it being illegal to peddle such articles without a license, it was held the contract was void, and no recovery, either upon the express contract or for the value of the rods upon an implied assumpsit, could be recovered.
All of these cases show that when a party deliberately enters into a contract or transaction forbidden by law, he cannot recover upon the express contract, nor will the law imply one for him. It would indeed be singularly inconsistent for the law to denounce the express contract as illegal and vicious, and then turn around and imply one for the parties. Had the plaintiff in this case delivered the horse to the defendant at its real value, to be paid when Bell and Everett should carry Kentucky, this would have been a bet within the denunciations of the statute as decided in Commonwealth vs. Shouse; and the express contract vicious, would the law refuse to sustain the express contract to pay one hundred and fifty dollars, the real value of the horse, because of its illegality, and then raise an implied one to pay the one-hundred and fifty dollars? The law is not thus inconsistent with itself. As heretofore said by this court, this plea is sustained for the public benefit and not the private advantage of the party. What might have been the aspect of the case had a creditor of Todd sued, we do not intimate ; but he cannot recover.
Judgment affirmed.